UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| LESLIE HILL, DANIEL QUACA, and CHEYENNE QUACA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CARGO RUNNER CO.,<br><br>Defendant. | Case No.<br><br><br><br><br><br><br><br><br><br><br><br>**JURY DEMANDED** |

## CLASS ACTION COMPLAINT

Leslie Hill, Daniel Quaca, and Cheyenne Quaca, on behalf of themselves and all others similarly situated, bring this action seeking damages, injunctive relief, and attorneys' fees and costs against Defendant Cargo Runner Co. ("Cargo Runner"), and allege as follows:

### Nature of the Action

1. This is a class action lawsuit brought on behalf of individuals who have signed lease agreements to provide truck driving services for Cargo Runner.

2. Cargo Runner is a motor carrier that transports property in interstate commerce under authority issued by the United States Department of Transportation ("DOT"). Cargo Runner transports property in equipment leased by individual truck drivers, including Plaintiffs.

3. Under federal law, motor carriers such as Cargo Runner may transport property in equipment that they themselves do not own only if the equipment is subject to a written lease

agreement that meets DOT's regulatory requirements, known as the Truth-in-Leasing regulations (the "TIL regulations"), 49 C.F.R. § 376, *et seq*.

4. Plaintiffs are individuals who executed lease agreements with Cargo Runner to provide truck driving services. As set forth in more detail below, Plaintiffs allege that Cargo Runner has violated the TIL regulations with respect to drivers with whom they have executed lease agreements by, *inter alia*, failing to timely and fully return escrowed funds; taking undisclosed, unspecified, and improper deductions from drivers' compensation and escrowed funds; failing to properly maintain and account for the drivers' escrowed funds; and failing to include mandatory provisions, disclosures, and terms in its lease agreements with drivers.

## The Parties

5. Leslie Hill is an adult resident of West Monroe, Louisiana. She performed truck driving services for Cargo Runner subject to a lease agreement with Cargo Runner from about July 2020 until about April 2021, and then again from about July 2021 until about December 2021.

6. Daniel Quaca is an adult resident of Bloomsdale, Missouri. He performed truck driving services for Cargo Runner, subject to a lease agreement with Cargo Runner, from about March 2020 until about September 2021.

7. Cheyenne Quaca is an adult resident of Bloomsdale, Missouri. She performed truck driving services for Cargo Runner, subject to a lease agreement with Cargo Runner, from about October 2020 until about August 2021.

8. Plaintiffs bring this action on behalf of the following class: all individuals who have performed truck driving services for Cargo Runner subject to a lease agreement with Cargo Runner at any time since February 18, 2018.

9. Cargo Runner is an Illinois company with corporate offices located at 131 Tower Drive in Burr Ridge, Illinois.

## Jurisdiction and Venue

10. The Court has original jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States.

11. The Court has personal jurisdiction over Cargo Runner because Cargo Runner is an Illinois corporation that transacts business in Illinois, and which maintains offices in Illinois.

12. The Court has personal jurisdiction over Plaintiffs because they performed work for Cargo Runner in Illinois.

13. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this district.

## Statement of Facts

14. Cargo Runner is a motor carrier authorized by DOT to transport property in interstate commerce consistent with 49 U.S.C. §§ 13901 and 13902, *et seq*.

15. Cargo Runner both employs "company drivers" and contracts with "contractor drivers" (sometimes called "owner-operators," "independent operators," and "lease drivers") to provide interstate property transportation services.

16. Individuals who seek to perform property transportation services as contractor drivers for Cargo Runner are required to attend an orientation at Cargo Runner's facility in Burr Ridge, Illinois.

17. Leslie Hill attended Cargo Runner's orientation at its facility in Burr Ridge, Illinois, in July 2020.

18. Daniel Quaca attended Cargo Runner's orientation at its facility in Burr Ridge, Illinois, in March 2020.

19. Cheyenne Quaca attended Cargo Runner's orientation at its facility in Burr Ridge, Illinois, in October 2020.

20. Cargo Runner requires individuals seeking to perform services as contractor drivers to sign an "Independent Contractor Lease Agreement."

21. The Independent Contractor Lease Agreements are standard form agreements that Cargo Runner presents to the drivers on a take-it-or-leave-it basis, without the opportunity for negotiation.

22. Cargo Runner's Independent Contractor Lease Agreement constitutes a "lease" within the meaning of the TIL regulations, 49 C.F.R. § 376.2(e).

23. Leslie Hill signed an Independent Contractor Lease Agreement with Cargo Runner on July 8, 2021. (*See* July Independent Contractor Lease Agreement, attached as **Exhibit 1**).

24. Leslie Hill signed a second Independent Contractor Lease Agreement with Cargo Runner on October 5, 2021. (*See* October Independent Contractor Lease Agreement, attached as **Exhibit 2**).

25. Cheyenne Quaca signed an Independent Contractor Lease Agreement with Cargo Runner on June 4, 2021. (*See* June Independent Contractor Lease Agreement, attached as **Exhibit 3**).

26. Cheyenne Quaca signed a second Independent Contractor Lease Agreement with Cargo Runner on August 13, 2021. (*See* August Independent Contractor Lease Agreement, attached as **Exhibit 4**).

27. While driving for Cargo Runner as a contractor driver, subject to a lease agreement with Cargo Runner, Leslie Hill operated under the business name "Bosco Truckin' 82, LLC."

28. While driving for Cargo Runner as contractor drivers, subject to a lease agreement with Cargo Runner, Daniel Quaca and Cheyenne Quaca operated as team drivers under the business name "Two Dogs Trucking, Inc."

29. The Independent Contractor Lease Agreements state that Cargo Runner may withhold money from each driver's compensation on a continuing basis as "escrow/security." (*See*, *e.g.*, July Independent Contractor Lease Agreement [**Ex. 1**] at § 11).

30. The Independent Contractor Lease Agreements state that Cargo Runner will fund the "escrow/security" "deposit" by deducting $200 from the drivers' compensation each week until "there is a minimum balance in the escrow account of two thousand dollars ($2,000)." (*Id.* [**Ex. 1**] at § 11).

31. The amounts deducted and retained by Cargo Runner from drivers' compensation pursuant to section 11 of the contractor drivers' Independent Contractor Lease Agreements constitute an "escrow fund" within the meaning of the TIL regulations, 29 C.F.R. § 376.2(l).

32. Cargo Runner's Independent Contractor Lease Agreements do not comply with TIL regulations pertaining to escrow funds because, among other things, they fail to:

    a. State that drivers may demand an accounting for transactions involving their escrow fund at any time.

    b. Sufficiently identify and describe the specific items to which the escrow fund can be applied.

      c.      Specify that in no event shall the escrow fund be returned later than 45 days from the date of termination.

33.      In addition, Cargo Runner has made unlawful deductions from the drivers' escrow funds for items unrelated to costs involved with the operation of leased equipment, such as, *inter alia*:

      a.      Deducting $2,500 as "liquidated damages" to pay for "administrative costs" if drivers terminate their Independent Contractor Lease Agreements "without cause" and without providing Cargo Runner with 14 days written notice. (*See*, *e.g.*, July Independent Contractor Lease Agreement [**Ex. 1**] at § 1).

      b.      Retaining the escrow fund beyond 45 days if drivers do not return all identification stamps, permits, prorates, permit numbers, and identification placards to Cargo Runner. (*Id.* [**Ex. 1**] at § 11).

      c.      Withholding the escrow fund if drivers fail to return various unspecified devices, "such as electronic logging devices, driver cameras, or GPS devices," to Cargo Runner upon termination of their Independent Contractor Lease Agreements. (*Id.* [**Ex. 1**] at § 4.E).

34.      In addition, Cargo Runner has failed to adhere to the TIL regulations concerning the maintenance and accounting of the contractor drivers' escrow funds by, *inter alia*:

      a.      Failing to pay interest to the drivers on the balance of their escrow funds on at least a quarterly basis.

      b.      Failing to provide an accounting to the drivers of all transactions involving their escrow funds, either by clearly indicating in individual settlement sheets the amount and description of all deductions made from the funds or by providing a separate

accounting to the drivers of all transactions involving the escrow fund on a monthly basis.

    c.    Improperly extending the time period for returning escrow funds by providing that Cargo Runner will return escrow funds within 45 "business days," rather than 45 calendar days. (*Id.* [**Ex. 1**] at § 11).

35.    Cargo Runner deducts a certain amount of money (in the range of about 10 cents) per mile per week from the drivers' compensation in order to fund a "maintenance account." (*Id.* [**Ex. 1**], Appendix D).

36.    The amounts deducted and retained by Cargo Runner from drivers' compensation for "maintenance" constitute an "escrow fund" within the meaning of the TIL regulations, 29 C.F.R. § 376.2(l).

37.    Cargo Runner has failed to adhere to the TIL regulations' requirements for escrow funds with regards to the drivers' "maintenance account." For example, with respect to that fund, Cargo Runner has failed to:

    a.    Provide the disclosures for escrow funds required by the TIL regulations, 49 C.F.R. § 376.12(k).

    b.    Specify the conditions that drivers must fulfill to have their "maintenance fund" returned.

    c.    Calculate or pay interest on the "maintenance fund."

    d.    Return the "maintenance fund" to terminated drivers within 45 days of the date of termination.

38. In addition, Cargo Runner charges drivers more than its costs for equipment and fails to disclose or adequately describe these "chargebacks" in its lease agreements or settlement statements. For example, Cargo Runner:

   a. Deducts $60 per week from the drivers' compensation for participation in Cargo Runner's "Tag Program," through which Cargo Runner provides drivers with base plates and registration for their vehicles.

   b. Charges drivers $500 if they fail to communicate with Cargo Runner for 12 hours while under dispatch or 48 hours if not under dispatch.

   c. Deducts $30 per week from the drivers' compensation if the drivers use an "electronic logging device" supplied to them by Cargo Runner.

   d. Deducts $18 per week from the drivers' compensation for "PrePass," an intelligent transportation system that electronically verifies the safety, credentials, and weight of commercial vehicles at participating state highway weigh stations.

39. In addition, Cargo Runner charges drivers more than its costs for insurance and fails to disclose or adequately describe these charges in its lease agreements or settlement statements.

40. Specifically, Cargo Runner's Independent Contractor Lease Agreement states the following:

> **Contractor Deduction for Insurance.** The Contractor may elect to have Carrier provide insurance coverage required by this agreement and deduct all costs from the Contractor's settlements. If Contractor will not accept loads from Carrier for a defined period (e.g., a week of vacation), he/she/it must give Carrier thirty (30) days [sic] notice to avoid deductions for insurance during the no-load period.

41. Cargo Runner made deductions for insurance from Leslie Hill's settlement statements, including $126.36 per statement for "physical insurance," $35 per statement for

8

"occupational insurance," and $220 per statement for "cargo insurance." (*See* Nov. 19, 2021, Settlement Statement, attached as **Exhibit 5**).

42. Cargo Runner made deductions for insurance from Daniel Quaca and Cheyenne Quaca's settlement statements, including $136.36 per statement for "physical insurance," $35 per statement for "occupational insurance," and $220 per statement for "cargo insurance." (*See* Sept. 3, 2021, Settlement Statement, attached as **Exhibit 6**).

43. On information and belief, the amounts deducted by Cargo Runner from the drivers' settlement statements for insurance exceeds the costs actually paid or incurred by Cargo Runner for such insurance coverage.

44. Cargo Runner provides the drivers with "cash cards" for purposes of purchasing fuel. The Independent Contractor Lease Agreements state the following with regards to such purchases:

> **CASH CARD USAGE**. In the event that Contractor elects to utilize a charge or cash card issued in Carrier's name for the purpose of purchasing fuel or other operational expenses, Contractor hereby agrees to hold Carrier harmless from any use or misuse of such card or program. Contractor further agrees that such charges will be deducted from Contractor's settlement or escrow/security deposit. Should the deduction amount be greater than the combination of settlement and escrow/security balances, Contractor further agrees to pay for these charges and hold Carrier harmless from such charges including, but not limited to, any interest, fines, or penalties attached to said charges for late or non-payment. In the event Carrier receives a discount for purchasing fuel, Carrier will pass along the at-pump discount to Contractor. Carrier will not pass along any rebates or discounts later received from fuel vendors.

(*See*, *e.g.*, July Independent Contractor Lease Agreement [**Ex. 1**] at § 15).

45. Contrary to the terms of the Independent Contractor Lease Agreement, Cargo Runner has deducted more from the drivers' earnings for fuel than it has actually paid.

46. For example, Cargo Runner deducted $2,841.39 from Leslie Hill's settlement statement dated November 19, 2021. However, that settlement statement reflects that Leslie Hill only charged $2,435.10 on her "cash card" for fuel. (*See* Settlement Statement [**Ex. 5**]).

47. Similarly, Cargo Runner deducted $1,243.26 from Daniel Quaca's and Cheyenne Quaca's settlement statement dated September 24, 2021. However, that settlement statement reflects that Daniel Quaca and Cheyenne Quaca only charged $1,095.00 on their "cash card" for fuel. (*See* Settlement Statement [**Ex. 6**]).

48. Cargo Runner's deductions, chargebacks, withholdings, excess charges, and failure to comply with the requirements of the TIL regulations, as set forth herein, have resulted in an improper windfall to Cargo Runner.

49. Cargo Runner's Independent Contractor Lease Agreements do not comply with the TIL regulations in numerous ways.

50. For example, the Independent Contractor Lease Agreements do not comply with the TIL regulations regarding timing of payments to drivers. The Independent Contractor Lease Agreements:

    a. Condition payment for work performed on the drivers first submitting "bills of lading" and "fully executed Carrier and shipper bills of lading." (*See*, *e.g.*, July Independent Contractor Lease Agreement [**Ex. 1**] at § 3.B).

    b. Authorize Cargo Runner to withhold drivers' compensation for up to 30 days after submission of all necessary delivery documents by the drivers. (*Id.* [**Ex. 1**] at § 3.C).

      c.      Permit Cargo Runner to withhold the drivers' final settlement payment up to 45 days after drivers have submitted "satisfactory proof … of full compliance with the provisions of this Agreement[.]" (*Id.* [**Ex. 1**] at § 3.F).

51.     Cargo Runner's drivers have suffered harm and sustained damages from Cargo Runner's actions, including (*inter alia*) improper deductions from their earnings, overcharging for equipment and insurance, and failing to adhere to the TIL regulations' requirements concerning the handling of escrow funds.

## Class Allegations

52.     Plaintiffs brings this lawsuit against Cargo Runner as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following class as to which Plaintiffs seek certification:

> all individuals who have performed truck driving services for Cargo Runner subject to a lease agreement with Cargo Runner at any time since February 18, 2018.

53.     This case may be maintained properly as a class action under Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2) and/or 23(b)(3).

54.     The proposed class is too numerous for practicable joinder because it is comprised of more than 85 individuals who are geographically dispersed throughout the United States.

55.     There are questions of law or fact common to the class that predominate over issues concerning only individual class members. These common questions include: the meaning and application of the terms used by Cargo Runner in its lease agreements with drivers; whether Cargo Runner's lease agreements comply with all TIL regulations; the legality, amounts, and nature of the deductions and withholdings made from drivers' earnings and escrowed funds; and the actual costs to Cargo Runner for insurance, equipment, and fuel, as compared to the amounts charged to the drivers for those items or services.

56. Plaintiffs' claims are typical of the claims of the class. Cargo Runner operates in a highly regulated industry that requires it to maintain standard operating procedures and uniform policies, procedures, and practices and adhere to laws and regulations governing motor carriers. The claims of the class for damages can reasonably be calculated from Cargo Runner's business records.

57. Plaintiffs will fairly and adequately protect and represent the interests of the class. They have no known conflict of interest with the class generally. Moreover, Plaintiffs have retained the undersigned counsel, who are experienced in class action litigation and on behalf of individuals working in the trucking industry.

58. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The alternative – numerous identical lawsuits alleging similar or identical causes of action, or joinder of numerous individuals into a single lawsuit – would not serve the interests of judicial economy. Likewise, the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual potential class members that would establish incompatible standards of conduct for Cargo Runner. Moreover, some class members – particularly current drivers – may be reluctant to bring their claims individually for fear of retaliation by Cargo Runner.

59. Public policy supports the broad remedial purposes of class actions in general and specifically to vindicate the rights afforded by the TIL regulations to drivers, whose individual claims may be too small to warrant the expense of litigation.

60. This class action is manageable due to the uniformity of claims among the class members and the amenability of wage and hour cases to both class litigation and the use of representative testimony and representative documentary evidence.

61. The contours of the class will be easily defined by reference to business records kept by Cargo Runner.

62. Cargo Runner has acted on grounds generally applicable to the class.

## COUNT I
### Violation of the Truth-in-Leasing Regulations

63. Plaintiffs incorporate here by reference paragraphs 1 through 51 of this Complaint.

64. As alleged, Cargo Runner has violated the TIL regulations by, *inter alia*, taking unspecified and excessive deductions from drivers' earnings for such things as insurance, fuel, and business expenses that should be borne by Cargo Runner; improperly maintaining drivers' escrow funds; making unlawful deductions from escrow funds; failing to return escrow funds within 45 days of termination of the drivers' lease agreements; and by failing to include the contents, disclosures, and terms by the TIL regulations in the drivers' lease agreements.

65. As a result of their failure to comply with the TIL regulations, Plaintiffs are entitled to declaratory judgment that Cargo Runner's Independent Contractor Lease Agreements violate 49 C.F.R. § 376.12.

66. As a result of their failure to comply with the TIL regulations, Plaintiffs are entitled to enjoin Cargo Runner from attempting to enforce the Independent Contractor Lease Agreements.

67. As a direct and proximate result of Cargo Runner's substantial and material failure to adhere to the TIL regulations, Cargo Runner has violated the rights of Plaintiffs and the putative class members and has caused Plaintiffs and the putative class members economic damages in an amount to be determined at trial.

68. Plaintiffs bring this claim pursuant to 49 U.S.C. § 14706(d).

## Jury Demand

69. Plaintiffs request a trial by jury on all claims so triable.

## Prayer for Relief

70. Plaintiffs respectfully request that the Court grant the following relief:

a. Certification of this action as a class action under Federal Rule of Civil Procedure 23.

b. Designation of Leslie Hill, Daniel Quaca, and Cheyenne Quaca as representatives for the certified class, and the undersigned counsel as counsel for the certified class.

c. Declaratory judgment that Cargo Runner's lease agreements are unlawful and in violation of the TIL regulations.

d. Judgment against Cargo Runner for all damages that the drivers sustained as a result of its violations of the TIL regulations, including but not limited to restitution for all improper or excessive charges, chargebacks, deductions, or withholdings; all amounts owed in interest on escrowed funds; all escrowed funds improperly withheld at the termination of the drivers' relationship with Cargo Runner; and all other direct and proximate damages.

e. Injunctive relief requiring Cargo Runner to comply fully with the TIL regulations.

f. Interest.

g. Attorneys' fees and costs, as provided for by 49 U.S.C. § 14704(e).

h. Any other relief that the Court deems just and proper.

Respectfully submitted,

LESLIE HILL, DANIEL QUACA, and CHEYENNE QUACA, individually and on behalf of all others similarly situated,

By their attorneys,


/s/ Bradley Manewith
Bradley Manewith, IL ARDC No. 6280535
Marc J. Siegel, IL ARDC No. 6238100
James D. Rogers, IL ARDC No. 6324570
SIEGEL & DOLAN LTD.
150 North Wacker Drive, Suite 3000
Chicago, Illinois 60606
Tel: (312) 878-3210
Fax: (312) 878-3211
bmanewith@msiegellaw.com
msiegel@msiegellaw.com
jrogers@msiegellaw.com

Hillary Schwab, Esq.
 *Pro hac vice* application forthcoming
Rachel Smit, Esq.
 *Pro hac vice* application forthcoming
Brant Casavant, Esq.
 *Pro hac vice* application forthcoming
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
Tel: (617) 607-3260
Fax: (617) 488-2261
hillary@fairworklaw.com
rachel@fairworklaw.com
brant@fairworklaw.com

Dated: February 18, 2022