**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LESLIE HILL, DANIEL QUACA, | ) | |
| and CHEYENNE QUACA, individually, | ) | |
| and on behalf of all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:22-cv-00910 |
| v. | ) | |
| | ) | District Judge John Z. Lee |
| CARGO RUNNER CO., | ) | Magistrate Judge Jeffrey T. Gilbert |
| | ) | |
| Defendant. | ) | |

**DEFENDANT CARGO RUNNER CO.'S**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Chelsea A. McCarthy
Melissa F. Gold
HOLLAND & KNIGHT LLP
150 N. Riverside Plaza, Ste. 2700
Chicago, Illinois 60606
312-263-3600
chelsea.mccarthy@hklaw.com
melissa.gold@hklaw.com

Justin W. Hanson
Philip M. Fornaro
FORNARO LAW
1022 S. LaGrange Road
La Grange, IL 60525
708-639-4320
justin@fornarolaw.com
philip@fornarolaw.com

*Attorneys for Defendant Cargo Runner Co.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION .......................................................................................................... 1

REGULATORY AND FACTUAL BACKGROUND .................................................... 1

ARGUMENT .................................................................................................................. 2

I.      PLAINTIFFS FAIL TO PLEAD A PLAUSIBLE CLAIM FOR RELIEF ............................................. 3

      A.      Plaintiffs plead no facts to support a claim under 49 U.S.C. § 14706(d). ............. 3

      B.      Plaintiffs fail to allege actual damages from a violation of the TIL
           Regulations ............................................................................................................ 4

           1.      Escrow Funds ............................................................................................ 5

           2.      Charge-Back Items .................................................................................... 7

           3.      Timing of Driver Compensation ............................................................ 12

II.      PLAINTIFFS LACK STANDING BECAUSE THEY FAIL TO ALLEGE A CONCRETE INJURY ....... 14

III.      PLAINTIFFS ARE NOT THE REAL PARTIES IN INTEREST ........................................ 15

CONCLUSION ............................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)...................................................................................1, 3

*Bell. Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)......................................................................................3

*Brant v. Schneider Nat'l, Inc.,*
   No. 20-C-1049, 2021 WL 179597 (E.D. Wis. Jan. 19, 2021) .......................4, 5, 13

*Derolf v. Risinger Bros. Transfer, Inc.,*
   259 F. Supp. 3d 876 (C.D. Ill. 2017) ...........................................................4

*Fox v. Transam Leasing, Inc.,*
   839 F.3d 1209 (10th Cir. 2016) ...................................................................1, 4

*Lueck v. Bureaus,*
   No. 20 C 2017, 2021 WL 4264368 (N.D. Ill. Sept. 20, 2021)................................14

*Niiranen v. Carrier One, Inc.,*
   No. 20-cv-06781, 2022 WL 103722 (N.D. Ill. Jan. 11, 2022)...............................4, 7

*OOIDA v. New Prime, Inc.,*
   339 F.3d 1001 (8th Cir. 2003) ....................................................................4

*OOIDA v. Swift Transp. Co. (AZ),*
   632 F.3d 1111 (9th Cir. 2011) ....................................................................4, 8

*Owner-Operator Independent Drivers Assoc. v. Landstar,*
   622 F.3d 1307 (11th Cir. 2010) ...............................................................8, 11, 12

*Thompson v. Illinois Dep't of Pro. Regul.,*
   300 F.3d 750 (7th Cir. 2002) .....................................................................3

*TransUnion LLC v. Ramirez,*
   141 S. Ct. 2190 (2021)...............................................................................14

*Weissman v. Weener,*
   12 F.3d 84 (7th Cir. 1993) .........................................................................15

**Statutes**

49 U.S.C. § 14102(a) ......................................................................................1

49 U.S.C. § 14704(a)(2)..............................................................................................4

49 U.S.C. § 14706(a)(1)..............................................................................................3

49 U.S.C. § 14706(d)...............................................................................................3, 4

**Other Authorities**

49 C.F.R. Part 376...........................................................................................1, 6, 8, 13

Fed. R. Civ. P. 12(b)(6) and 12(b)(1) ................................................................. *passim*

Fed. R. Civ. P. 17(a)(1)............................................................................................15

Fed. R. Civ. P. 17(a)(3)............................................................................................15

## INTRODUCTION

Plaintiffs are truck drivers that worked under lease agreements with Cargo Runner Co., a motor carrier.[1] They claim that the lease agreements violated federal regulations, specifically, the Truth in Leasing Regulations ("TIL Regulations"). 49 C.F.R. § 376.12. The Complaint alleges a laundry list of Cargo Runner's purported violations. But, a violation of the regulations—without conceding that there has been one—is not enough for Plaintiff's Complaint to succeed. Plaintiffs must allege that they have suffered financial harm as a result of the purported violations. The Complaint is devoid of these facts. And Plaintiffs' failure to allege any injury also means that they lack standing. The Court should therefore dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).

## REGULATORY AND FACTUAL BACKGROUND[2]

Congress regulates leases between independent truckers and motor carriers transporting cargo in interstate commerce. 49 U.S.C. § 14102(a). The Truth in Leasing Regulations, 49 C.F.R. Part 376, governs lease requirements between the truckers and carriers. The purpose of these regulations is "to promote truth-in-leasing—a full disclosure between the carrier and the owner-operator of the elements, obligations, and benefits of leasing contracts signed by both parties; to eliminate or reduce opportunities for skimming and other illegal or inequitable practices by motor carriers; and to promote the stability and economic welfare of the independent trucker segment of the motor carrier industry." *Fox v. Transam Leasing, Inc.*, 839 F.3d 1209, 1211 (10th Cir. 2016) (cleaned up).

---

[1] As discussed below, the lease agreements are between Cargo Runner and companies, not the plaintiffs.
[2] This section is derived from the allegations in Plaintiffs' Complaint, which Cargo Runner takes as true solely for purposes of this motion to dismiss. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

Cargo Runner is one such motor carrier. Dkt. No. 1, *Compl.*, ¶ 2. The lease agreements at issue are between Bosco's Truckin 82 LLC and Two Dogs Trucking Inc. and Cargo Runner. *Compl.*, Exhs. 2–4. As alleged in the Complaint, Cargo Runner leased equipment, *i.e.* trucks, with drivers from the contractor entities under those lease agreements. Neither Bosco's Truckin 82 nor Two Dogs Trucking are parties to this lawsuit. Plaintiff Leslie Hill does not have a lease agreement with Cargo Runner; the lease agreements are with her business, Bosco's Truckin 82. Plaintiffs Cheyenne and Daniel Quaca also do not have a lease agreement with Cargo Runner. Their relationship is governed by the lease agreement between Two Dogs Trucking Inc. and Cargo Runner. *Compl.*, Exhs. 3, 4.

The lease agreements at issue contain provisions addressing the contractors' compensation, responsibility for payment of expenses, insurance, escrow/security deposits, and usage of cash cards. *Compl.*, Exhs. 1–4. And of particular significance in this case, the lease agreements include appendices that explain the specific charges that will be made to the contractor entities. Those appendices identify the charges for Cargo Runner's Tag Program (Appendix B), the charge for using the carrier's electronic logging device (Appendix C), and a specific authorization for deduction of charges for the escrow account, registration, insurance, trailer rent, and other items (Appendix D). *Compl.*, Exhs. 1–4.

## ARGUMENT

Plaintiffs seek relief in this case for Cargo Runner's alleged violations of the TIL Regulations on behalf of "all individuals who performed truck driving services for Cargo Runner subject to a lease agreement with Cargo Runner at any time since February 18, 2018." *Compl.,* ¶ 52. However, Plaintiffs bring their claim under the wrong statutory section, and the claim they allege finds no basis in the facts. Moreover, Plaintiffs fail to allege that they sustained any injury

as a result of a violation of the TIL Regulations. The lack of any injury warrants dismissal for both failure to state a claim under Rule 12(b)(6) and a lack of standing under Rule 12(b)(1).

## I.      Plaintiffs Fail To Plead A Plausible Claim for Relief.

Plaintiffs' Complaint should be dismissed under Rule 12(b)(6) because Plaintiff's fail to plead a plausible claim for relief. To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell. Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Factual allegations that are merely consistent with a defendant's liability, conclusory statements, and formulaic recitations of the elements of a cause of action are, by themselves, insufficient. *Iqbal,* 556 U.S. at 678.

A complaint only satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555–56. Furthermore, a plaintiff can "plead [itself] out of court by pleading facts" that establish an impenetrable defense to its claims. *Thompson v. Illinois Dep't of Pro. Regul*., 300 F.3d 750, 753 (7th Cir. 2002) (dismissal proper when a plaintiff pleads himself out of court by attaching an exhibit to his complaint that demonstrates plaintiff is not entitled to relief).

Plaintiffs' Complaint should be dismissed under Rule 12(b)(6) for two reasons. First, it fails to plead facts to support a claim under 49 U.S.C. § 14706(d), the statutory section on which Plaintiffs rely. Second, it does not plead facts to show that Plaintiffs sustained any damages as required to maintain a private cause of action for violation of the TIL regulations.

### A.      Plaintiffs plead no facts to support a claim under 49 U.S.C. § 14706(d).

Plaintiffs' only claim against Cargo Runner is under 49 U.S.C. § 14706(d). *Compl*. ¶ 68. Section 14706(d) governs liability of carriers under receipts and bills of lading for property it transports, *i.e.* cargo damage claims. 49 U.S.C. § 14706(a)(1). The liability imposed under

§ 14706(d) is for loss or injury to property being transported. *Id.* The Complaint here contains no facts about Cargo Runner's liability under receipts and bills of lading or any actual loss or injury to property being transported by Cargo Runner. In short, Plaintiffs' complained-of conduct has nothing to do with damage to in-transit cargo. The Complaint should be dismissed for failure to state a claim under 49 U.S.C. § 14706(d).

**B.** **Plaintiffs fail to allege actual damages from a violation of the TIL Regulations.**

The crux of Plaintiffs' claim is that Cargo Runner's lease agreements fail to comply with the TIL Regulations. *Compl.*, ¶ 4. But, Plaintiffs fail to allege that they sustained damages as a result of Cargo Runner's purported violations.

Under 49 U.S.C. § 14704(a)(2), "[a] carrier is liable for damages <u>sustained by</u> a person as a result of an act or omission of that carrier or broker in violation [of the regulations]." *Brant v. Schneider Nat'l, Inc.*, No. 20-C-1049, 2021 WL 179597, at *7 (E.D. Wis. Jan. 19, 2021) (cleaned up) (emphasis added). Though the Seventh Circuit has not directly addressed the issue, the majority of courts considering it have concluded that § 14704(a)(2) requires contractors to show how they sustained damages because of the carrier's violations. *Niiranen v. Carrier One, Inc.*, No. 20-cv-06781, 2022 WL 103722, at * 4 (N.D. Ill. Jan. 11, 2022) (citing; *Owner-Operator Indep. Drivers Ass'n, Inc. ("OOIDA") v. Landstar System, Inc.,* 622 F.3d 1307, 1325 (11th Cir. 2010) (collecting cases)); *Derolf v. Risinger Bros. Transfer, Inc.*, 259 F. Supp. 3d 876, 886 (C.D. Ill. 2017); *Fox*, 839 F.3d at 1218; *OOIDA v. Swift Transp. Co. (AZ),* 632 F.3d 1111, 1122 (9th Cir. 2011); *OOIDA v. New Prime, Inc*., 339 F.3d 1001, 1012 (8th Cir. 2003). This, in turn, requires contractors to demonstrate that they suffered financial harm as a result of a defendant's violations. *Brant*, 2021 WL 179597, at *7.

Here, Plaintiffs allege Cargo Runner has violated the TIL Regulations by (1) failing to disclose information about or properly maintain escrow funds, (2) charging drivers more for equipment, insurance, and fuel than Cargo Runner's actual cost for those items, and (3) including in its lease agreements provisions that may affect the timing of drivers' compensation. These alleged violations are either contradicted by the documents attached to the Complaint or Plaintiffs do not allege facts to show they have sustained damages as a result.

### 1.    Escrow Funds.

Plaintiffs make four general complaints about Cargo Runner's disclosure or treatment of escrow funds. *Compl.*, ¶¶ 32–37. Cargo Runner addresses each below.

*First*, Plaintiffs claim that Cargo Runner's lease agreements do not comply with the TIL Regulations because they fail to state that drivers can demand an accounting, describe the items to which the escrow fund can be applied, and specify that the escrow funds should be returned within 45 days. *Compl.*, ¶ 32. Yet, Plaintiffs have not alleged any facts about how these purported failures caused them financial harm. There are no allegations about how this conduct affected the named Plaintiffs in any way. The only statements Plaintiffs' Complaint makes about any harm is the generalized conclusion that "Cargo Runner's drivers have suffered harm and sustained damages from Cargo Runner's actions." *Compl.*, ¶ 51. But, these bare and conclusory allegations are not enough to state a claim. *Brant*, 2021 WL 179597, at *7 ("The complaint merely concludes that Brant and other drivers were financially harmed by Defendants' failure to adhere to the TILA regulations. . . . Stated differently, Brant does not allege a causal connection between Defendants' alleged failure to provide certain information and his claim that he and the other drivers were not paid enough.")

And, contrary to Plaintiffs' claim in paragraph 32, Cargo Runner's lease agreements affirmatively disclose the specific items to which the escrow fund can be applied. *Compl.*, Exhs. 1–4 at §§ 4, 8, 9, 10, 11, 12, 15, 17, Appendix B.

*Second*, Plaintiffs claim that Cargo Runner has made unlawful deductions from the drivers' escrow funds for items unrelated to costs involved with the operation of leased equipment or have withheld/retained escrow funds beyond 45 days if certain devices or permits are not returned. *Compl.*, ¶ 33. But, the Complaint fails to allege that these deductions were made to *Plaintiffs'* escrow accounts or that *their funds* were withheld for failure to return any permits, identification, or devices. Instead, as support for these allegations, Plaintiff just cites to the lease agreements. *Compl.*, ¶ 33. Without facts to support that they have suffered an injury as a result of these violations, Plaintiffs' claim cannot stand.

Additionally, nothing in the TIL Regulations limits the use of escrow funds to "costs involved with the operation of leased equipment" as Plaintiffs claim. *Compl.*, ¶ 33. *See* 49 C.F.R. § 376.12(k). The Regulations simply require that a carrier identify in the lease the "specific items to which the escrow fund can be applied." 49 C.F.R. § 376.12(k)(2). As discussed above, Cargo Runner's lease agreements provide those disclosures.

*Third*, Plaintiffs claim that Cargo Runner has failed to adhere to the TIL Regulations by not paying interest on escrow funds or providing an accounting of escrow transactions and by stating in the lease agreements that Cargo Runner will return escrowed funds within 45 "business days" rather than 45 calendar days. *Compl.*, ¶ 34. Like the other complaints discussed above, Plaintiffs fail to tie these allegations to injuries they each have suffered. There is no allegation that *Plaintiffs* failed to receive an accounting of any funds deducted from their escrow or that

*they* did not receive interest payments.[3]  There is likewise no allegation that *Plaintiffs'* escrow funds were withheld for more than 45 days.  And, there are no facts alleged as to how any of this purported conduct caused Plaintiffs harm.

*Fourth*, the Complaint asserts that Cargo Runner has failed to adhere to the TIL Regulations regarding escrow funds as to "maintenance accounts," which Plaintiffs contend are also "escrow accounts."  *Compl.*, ¶¶ 35–37.  For the same reasons that paragraphs 32 through 34—also addressing escrow accounts—fail to state a claim, the allegations about the maintenance accounts likewise fail.  In short, Plaintiffs fail to allege that *they* have suffered any injury as a result of any violation of the Regulations.

Furthermore, a review of the exhibits appended to the Complaint demonstrate why, at least as to Plaintiffs Daniel and Cheyenne Quaca (of Two Dogs Trucking, Inc.), they cannot plead any damages relating to the maintenance account.  The most recent contract for Two Dogs Trucking, Inc. (Unit #356) specifies that there is no charge for a maintenance account.  Appendix D says that the "payment amount" for the "maintenance account" is "N/A."  *Compl.* Exh. 4, at Appendix D.  The Two Dogs Trucking settlement statement likewise contains no charge for a maintenance account.  *Compl.*, Exh. 6.

Plaintiffs' allegations about Cargo Runner's either disclosure or maintenance of escrow funds fall short.  The Complaint contains no facts that the Plaintiffs suffered an injury as a result of the violations and the claim based on the escrow funds should be dismissed.

### 2.    Charge-Back Items.

The Complaint also claims that Cargo Runner has violated the TIL Regulations by

---

[3] Plaintiffs Complaint here lacks the facts alleged in the recent District Court case of *Niiranen v. Carrier One, Inc.* where plaintiffs had alleged that they themselves did not receive interest payments and that the carrier's violations resulted in them being compensated at a rate less than promised in the lease agreement.  2022 WL 103722, at *5.

charging more than its costs for equipment, insurance, and fuel and failing to disclose those items. *Compl.,* ¶¶ 38–48. However, the Regulations for these items only require disclosure to drivers of the amount they will be charged.  49 C.F.R. § 376.12(h) (charge-backs); *see also* 49 C.F.R. § 376.12(j) (insurance).  To the extent Cargo Runner's own cost is less than what is charged to the drivers, nothing prohibits Cargo Runner from profiting on those items and Plaintiffs have failed to allege any damages as a result.

The TIL Regulations state that a lease should specify all items that will be initially be paid for by the carrier but ultimately deducted from the lessor's compensation at the time of payment or settlement. 49 C.F.R. § 376.12(h).  These are referred to as "charge-back" items.  *Id.* In order to comply with the TIL Regulations, carriers are only required to "disclose the flat-fee" chargeback items "in the lease and follow up with settlement statements that explain the final amount charged back" under 49 C.F.R. § 376.12(h). *Landstar,* 622 F.3d at 1320.

In reaching this conclusion, the Eleventh Circuit in the case of *Owner-Operator Independent Drivers Assoc. v. Landstar* reviewed the legislative history of the TIL Regulations and relied on the fact that the final regulations specifically omitted any requirement that carriers disclose their cost for the items that were ultimately deducted from lessor's compensation.  *Id.* at 1320–21.  The Court reasoned:  "The ICC considered a prohibition on profits from charge-backs in 1981, but ultimately rejected making it part of the final regulation.  Thus, the District Court did not err in finding in favor of Landstar that, as a matter of law, Landstar can profit from charge-back items."  *Id.* at 1319; *see also Swift Transp. Co. (AZ),* 632 F.3d 1111, 1117 (9th Cir. 2011) ("The district court, and virtually every court that has addressed the issue, has correctly concluded that profiting from charge-backs is not per se unlawful.").

8

***Equipment costs***: Plaintiffs allege that Cargo Runner has violated the TIL Regulations by profiting from equipment charges (by charging drivers more than what Cargo Runner pays) or by failing to disclose these charges. *Compl.*, ¶ 38. Specifically, Plaintiffs take issue with charges relating to the Tag Program ($60/week), electronic logging devices ($30/week), and PrePasses ($18/month[4]). *Compl.*, ¶ 38. However, where the Plaintiffs' companies were charged fees for these items, the governing lease agreements explicitly disclosed what the charges would be. *See, e.g. Compl.*, Exhs. 1–4 at § 8 ("Contractor's Responsibility for Payment of Expenses"); Appendix B (Tag Program); and Appendix C (Carrier Owned Equipment).

As to Plaintiff Leslie Hill's company, Bosco's Truckin 82, the settlement statement appended to the Complaint reflects a $60 charge for the Tag Program, labeled "Truck Registration & 2290 HWY USE." *Compl.*, Exh. 5. It also reflects a $30 charge for electronic logging devices, labeled "ELD + TVC Services." These charges were specifically disclosed in Bosco's lease agreement. And, even though Bosco's was not charged for a PrePass in the settlement statement appended to the Complaint, its contract disclosed that charge as well:

| Deductions | Payment amount | | Frequency of deduction | Amount |
|---|---|---|---|---|
| Escrow | $200 continue | 10 | One Time / **Weekly**/ Monthly / Yearly | $2000 |
| Registration &2290 HWY USE | $ 60 | | One Time / **Weekly**/ Monthly / Yearly | |
| OCC ACC | $ 35 | No end date | One Time / **Weekly**/ Monthly / Yearly | |
| Physical insurance | $126.36 | | One Time / **Weekly**/ Monthly / Yearly | |
| Truck payment | 3x$100;175x800 contienue | | One Time / **Weekly**/ Monthly / Yearly | |
| Truck deposit | n/a | | One Time / **Weekly**/ Monthly / Yearly | |
| Trailer rent | $450 | | One Time / **Weekly**/ Monthly / Yearly | |
| Cargo | $220 | | One Time / **Weekly**/ Monthly / Yearly | |
| MVR | n/a | | **One Time**/ Weekly / Monthly / Yearly | |
| Drug test | n/a | | **One Time**/ Weekly / Monthly / Yearly | |
| Hotel/uber/flight | n/a | | **One Time**/ Weekly / Monthly / Yearly | |
| AOBRD & TABLET deposit | n/a | | **One Time**/ Weekly / Monthly / Yearly | |
| ELD + TVC | $30 | | One Time / **Weekly**/ Monthly / Yearly | |
| Maintenance account | 0 . 10      per mile | | One Time / **Weekly**/ Monthly / Yearly | optional |
| transflo | $5 | | One Time / **Weekly**/ Monthly / Yearly | |
| Prepass | $ 18 | | One Time / Weekly/ **Monthly** / Yearly | optional |

_____

[4] The Complaint alleges the PrePass charge was $18 week, but the lease agreements make clear it was a monthly charge where applicable.

*Compl.*, Exh. 2 at Appendix D (emphasis added); *see* also Appendix B (Tag Program) and Appendix C (ELD charges).  These charges were also disclosed in the lease agreement with Two Dogs Trucking.

| Deductions | Payment amount | | Frequency of deduction | Amount |
|---|---|---|---|---|
| Escrow | $200 | 10 | One Time / **Weekly**/ Monthly / Yearly | $2000 |
| Registration &2290 HWY USE | $ 60 | | One Time / **Weekly**/ Monthly / Yearly | |
| OCC ACC | $ 35 | No end date | One Time / **Weekly**/ Monthly / Yearly | |
| Physical insurance | $136.36 | | One Time / **Weekly**/ Monthly / Yearly | |
| Truck payment | Rent $850  + 0.14 cpm | | One Time / **Weekly**/ Monthly / Yearly | |
| Truck deposit | n/a | | One Time / **Weekly**/ Monthly / Yearly | |
| Trailer rent | $450 | | One Time / **Weekly**/ Monthly / Yearly | |
| Cargo | $220 | | One Time / **Weekly**/ Monthly / Yearly | |
| MVR | n/a | | **One Time**/ Weekly / Monthly / Yearly | |
| Drug test | n/a | | **One Time**/ Weekly / Monthly / Yearly | |
| Hotel/uber/flight | n/a | | **One Time**/ Weekly / Monthly / Yearly | |
| AOBRD & TABLET deposit | n/a | | **One Time**/ Weekly / Monthly / Yearly | |
| ELD + TVC | $30 | | One Time / **Weekly**/ Monthly / Yearly | |
| Maintenance account | N/A     per mile | | One Time / **Weekly**/ Monthly / Yearly | optional |
| transflo | $5 | | One Time / **Weekly**/ Monthly / Yearly | |
| Prepass | $ 18 | | One Time / Weekly/ **Monthly** / Yearly | optional |

*Compl.*, Exh. 4 at Appendix D (emphasis added); *see* also Appendix B (Tag Program) and Appendix C (ELD charges).  Furthermore, Both Two Dogs Trucking and Bosco's signed each of the appendices disclosing these charges.

Plaintiffs also claim that Cargo Runner has violated the TIL Regulations by charging drivers $500 if they fail to communicate for 12 hours while under dispatch.  *Compl.*, ¶ 38(b). Yet, Cargo Runner's lease agreements affirmatively discloses contractor's responsibility for payment of expenses including a fee of $500 for failure to communicate with Carrier.  *Compl.*, Exh. 1–4 at § 8(S). Even so, Plaintiffs still fail to plead that Cargo Runner charged *them* for failure to communicate or how this constitutes a violation of the Regulations.

**_Insurance Costs_**:  Plaintiffs also claim that Cargo Runner has violated the TIL Regulations by charging more for insurance than the costs actually incurred by Cargo Runner and by failing to disclose these charges.  *Compl.*, ¶¶ 39–43.  However, the Regulations do not

prohibit Cargo Runner from charging more to drivers for insurance than what Cargo Runner incurs, even taking Plaintiffs' allegations as true that this is the case, and Cargo Runner's lease agreements disclose the amount of insurance charges.

"In rejecting a proposed regulation mandating disclosure of a motor carrier's actual insurance costs for insurance charge-backs, the ICC explained . . . 'We believe that a prime concern of lessors in choosing insurance coverage is knowing exactly how much they will be charged . . . *It is the cost to lessors, not the cost to the carriers, which is critical to the lessors in choosing insurance coverage*.'" *Landstar*, 622 F.3d at 1321 (cleaned up). Thus, Plaintiffs' claim that Cargo Runner has violated the TIL Regulations for charging drivers more for insurance than what it incurs is belied by the legislative history of the Regulations themselves.

Furthermore, Cargo Runner's lease agreements disclose the insurance charges Plaintiffs would incur. The lease agreements discuss the insurance requirements in Section 9 and Appendix D specifies what the exact amount of those insurance charges will be. The charges identified in Appendix D match the amounts actually charged Plaintiffs on their settlement statements. Shown in the excerpt above, Leslie Hill/Bosco's lease agreement discloses the $126.36 charge for physical insurance (Physical Insurance), the $35 charge for occupational insurance (OCC ACC), the $220 charge for cargo insurance (Cargo) that are highlighted in the Complaint. *Compare Compl.*, Exh. 2 at Appendix D, *with* Exh. 5.

The same is true for Two Dogs Trucking/the Quacas. Its lease agreement at Appendix D discloses a $126.36 charge for physical insurance (Physical Insurance), the $35 charge for occupational insurance (OCC ACC), and the $220 charge for cargo insurance (Cargo) that are highlighted in the Complaint. *Compare Compl.*, Exh. 4 at Appendix D, *with* Exh. 6.

Additionally, Cargo Runner permitted its contractors to obtain its own insurance. Section

9(H) of each lease agreement states that: "Contractor shall either elect insurance coverage provided through Carrier . . . or provide proof of all required insurance policies as stated." If the disclosed insurance charge was not acceptable to Boscos and Two Dogs Trucking, they were not required to obtain insurance through Cargo Runner.

**_Fuel Costs_**: Plaintiffs next claim that Cargo Runner "deducted more from the drivers' earnings for fuel than it has actually paid." *Compl.,* ¶¶ 45–47.[5] However, Cargo Runner's lease agreements Section 15 discloses that drivers may be charged more than what Cargo Runner actually incurs for fuel. *See Compl.*, Exh. 1 at § 15 ("Carrier will not pass along any rebates or discounts later received from fuel vendors.").

Additionally, Plaintiffs fail to allege how they have sustained any damages as a result of Cargo Runner's charge-backs for equipment, insurance, or fuel, even if Cargo Runner earned a profit as Plaintiffs allege. As discussed, Plaintiffs are required to allege actual damages. They have failed to do so, and the Complaint as to these items should be dismissed. *Landstar*, 622 F.3d at 1325 ("[P]roof of profits and other overcharges is not standing alone proof of actual damages in this case.") (affirming district court).

For these reasons, Plaintiffs' claim based on the charge-back items should be dismissed.

### 3. Timing of Driver Compensation.

Plaintiffs' last claim that Cargo Runner's lease agreements violate the TIL regulations regarding timing of payments to drivers by conditioning payment on submission of bills of

---

[5] The difference between the "fuel ($)" column and the "amount" column for fuel charges on the settlement statements is not a mark-up by Cargo Runner. The differential is related to service fees or other purchases besides truck fuel that were made on the fuel card, such as fuel for a refrigerated trailer, *i.e.* "reefer fuel," or a cash advance. For example, the settlement statement for Bosco's Truckin 82 identifies that in addition to the $2,435.10 in fuel purchased, there was a $200 cash advance. *Compl.*, Exh. 5. The drivers are responsible for purchases on the fuel cards and they are required to keep receipts of those purchases; thus they are fully aware of the charges made. *Compl.*, Exhs. 1–4 at §§ 3(B), 15.

lading or other documents. *Compl.*, ¶ 50(a)–(c). But, the applicable regulation states that payment may be conditioned upon "submission of the necessary *delivery documents* concerning a trip in the service of the authorized carrier. The documentation required before the lessor can receive payment is limited to log books required by the Department of Transportation and *those documents necessary for the authorized carrier to secure payment from the shipper*." 49 C.F.R. § 376.12(f) (emphasis added). A signed bill of lading—the receipt for the carriage—is precisely the sort of document the regulation refers to.

Furthermore, Plaintiffs have failed to plead any injury resulting from these purported failures. Plaintiffs have not alleged if or when Cargo Runner conditioned or withheld *their* payment on them first submitting "bills of lading" or "fully executed Carrier and shipper bills of lading." *Compl.*, ¶ 50(a). Plaintiffs have failed to plead if or when Cargo Runner withheld *their* compensation for up to 30 days after submission of all necessary delivery documents by the drivers. *Compl.*, ¶ 50(b). And, Plaintiffs have failed to plead if or when Cargo Runner withheld *their* final settlement payment up to 45 days after having submitted satisfactory proof of full compliance with the lease agreements. *Compl.*, ¶ 50(c). In none of these instances does the Complaint allege how any of these purported failures, even if they did occur to Plaintiffs, resulted in them sustaining damages.

Plaintiffs fail to allege facts to support their claim that Cargo Runner has violated the TIL Regulations. The lease agreements themselves either belie Plaintiffs claim or the Complaint fails to make any non-conclusory allegations that Plaintiffs suffered an injury from the purported violations. The Complaint should therefore be dismissed under Rule 12(b)(6). *Brant*, 2021 WL 179597, at * 7 ("[V]ague allegations are not enough to open the doors to the time-consuming and expensive discovery that a class action entails.").

13

## II.     Plaintiffs Lack Standing Because They Fail To Allege A Concrete Injury.

Plaintiffs' Complaint is premised on the failure of Cargo Runner's leases or practices to comply with the TIL Regulations, yet the Complaint lacks any allegations that these violations have caused any concrete or particularized injury to the Plaintiffs.  Thus, the Complaint should be dismissed for Plaintiffs' lack of standing pursuant to Fed. R. Civ. P. 12(b)(1).

"As the party invoking federal jurisdiction, the plaintiff bear the burden of demonstrating that they have standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190,  2207 (2021). Plaintiff must show (1) a concrete and particularized injury in fact (2) that was likely caused by the defendant, and (3) that would likely be redressed by a favorable judicial decision. *Id*. at 2203. The Supreme Court has rejected the proposition that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 2205. "Article III standing requires a concrete injury [physical, monetary, or cognizable intangible harm] even in the context of a statutory violation." *Id.* Where a plaintiff seeks damages, she must allege that the purported statutory violation resulted in harm to her in order to satisfy the requirement of a concrete and particularized injury.  *Id.* at 2210–11; *see also Lueck v. Bureaus*, No. 20 C 2017, 2021 WL 4264368, at *4–*5 (N.D. Ill. Sept. 20, 2021) ("[A]s we know, a statutory violation alone is insufficient to establish standing.").  Though a "material risk of harm" may constitute a concrete injury for injunctive relief, that risk must be sufficiently imminent and substantial.  *TransUnion*, 141 S. Ct. at 2210.

Plaintiffs' Complaint contains a list of ways Cargo Runner's lease agreements purportedly run afoul of the TIL Regulations.  But, as set forth in Section I above, Plaintiffs fail to allege how those violations actually *caused them harm* in any way.  For the same reasons that

14

Plaintiffs have failed to state a claim for relief—the lack of any damages as a result of the alleged violations—Plaintiffs have failed to allege that they suffered a concrete injury. While Plaintiffs also seek the remedy of injunctive relief, the Complaint likewise fails to allege any imminent and substantial material risk of harm. Plaintiffs are no longer driving for Cargo Runner and have alleged no facts that Cargo Runner's conduct will have any more effect on them. The Court should therefore dismiss the Complaint for lack of standing under Rule 12(b)(1).

### III.     Plaintiffs Are Not the Real Parties in Interest.

The Complaint is also deficient because the Plaintiffs are not the real parties in interest. An "action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). The purpose of Rule 17 is avoid the double counting that would occur if parties injured both directly and derivatively were allowed to recover. *Weissman v. Weener*, 12 F.3d 84 (7th Cir. 1993). Plaintiffs have sued Cargo Runner in their individual capacities, but they are not the contracting parties. The lease agreements are with the Plaintiffs' businesses, Boscos Truckin 82 LLC and Two Dogs Trucking Inc. *Compl.*, Exhs. 1–4. Plaintiffs merely "performed truck driving services [on behalf of the contracting entities] for Cargo Runner." *Compl.*, at ¶¶ 5–7. If the Complaint is not dismissed entirely, the correct parties be substituted.[6]

<u>**CONCLUSION**</u>

For these reasons, the Court should grant Cargo Runner's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1).

Respectfully submitted,

**CARGO RUNNER CO.**

By: <u>s/ Chelsea Ashbrook McCarthy</u>
       One of its attorneys

---

[6] Cargo Runner reserves the right to seek dismissal under Rule 17(a) if the correct parties are not substituted within a reasonable time. Fed. R. Civ. P. 17(a)(3).