# Exhibit 1
July Independent Contractor Lease Agreement

DocuSign Envelope ID: 1703ACB7-E0F8-4C60-B896-A0F2EA14C2E0

# CARGO RUNNER CO

## Independent Contractor Lease Agreement

Lease: 412

THIS AGREEMENT, entered into this 08 day of July , 2021, at the location of Burr Ridge, Illinois by and between Cargo Runner Co, (hereinafter referred to as "Carrier"), and owner of said equipment, BOSCO'S TRUCKIN 82 LLC at the address of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ telephone number ▇▇▇▇▇▇▇, SSN or FID ▇▇▇▇▇▇(hereinafter referred to as "Contractor").

### WITNESSETH:

WHEREAS, Carrier is engaged in the interstate transportation of commodities as a motor carrier under authority from the Department of Transportation (hereinafter referred to as "DOT"), between points in the United States as indicated in MC Number 902809: and

WHEREAS, Contractor desires to transport commodities as may be provided by Carrier, and Carrier desires for Contractor to provide such transportation services;

NOW, THEREFORE, in consideration of mutual promises contained herein, Carrier and Contractor hereby agree as follows:

1. **EFFECTIVE DATE AND TERMINATION**. This contract shall become effective on the 08 th day of July , 2021, and shall remain in full force and effect for a one year period from the date of execution, after which it shall automatically renew for one year periods. This contract may be terminated by either party for any reason or for no reason at the expiration of the initial or any renewal term by providing fourteen (14) days written notice to the other party or by mutual consent. If Contractor terminates this Agreement without cause and without giving the required 14 days written notice, Contractor will pay to Carrier liquidated damages of $2,500.00 for administrative costs to terminate the Agreement and obtain new Contractor. Provided, that if Contractor terminates this agreement within six months of the date of execution, Carrier may

charge contractor for the costs of driver qualification, orientation, and training, up to a maximum of $1,500.00. However, Carrier may terminate for cause without notice. Termination for cause includes, but is not limited to, the following:

a.  Contractor's driver failing a drug test or otherwise becoming unqualified;
b.  Contractor seeking to compete with Carrier;
c.  Contractor failing to maintain insurance as required under this Agreement;
d.  Contractor's otherwise failing to adhere to the requirements of this Agreement.
e.  Contractor failing to obey Company Rules and Regulations; Company Policy.

Upon termination of this Agreement by either party under any circumstances, all signs or certificate numbers or both and any other descriptive material or matter attached to Contractor's equipment pertaining to Carrier, and any fuel cards issued to Contractor by Carrier, shall be immediately removed from Contractor's equipment and returned to Carrier. In the event Contractor's driver becomes disqualified during the term of this Agreement, Contractor may replace the driver with another, who is qualified according to the FMCSA regulations, and with approval of Carrier, whose consent shall not be unreasonably withheld.

2.  **EQUIPMENT**.  Contractor hereby agrees to furnish to Carrier upon the latter's request the equipment described below:

| Unit # | Year | Make | Model | Serial # |
|---|---|---|---|---|
| 412 | 2019 | International | LT625 | 3HSDZAPR9KN757921 |
|  |  |  |  |  |

Contractor represents that it has title to the above-referenced equipment or holds the equipment by virtue of a lease or purchase agreement. Carrier shall have exclusive possession, control and use of the equipment for the duration of this Agreement. This statement is made to comply with 49 C.F.R. § 376.12(c)(1) and should in no way affect Contractor's status as an independent contractor.  Such equipment shall be marked with Carrier's identification, pursuant to 49 C.F.R. § 390.21, at Carrier's expense.

3.  **COMPENSATION**.  Carrier agrees to compensate Contractor as follows:

A. **Compensation Schedule**.  Carrier shall pay Contractor pursuant as set forth in Appendix A.

B. **Documentation Required for Payment**. Payment shall be withheld until submission to Carrier of all properly completed documents and paperwork related to the transportation of commodities as may be required by Carrier, DOT, or any other governmental entity or agency, including delivery receipts, bills of lading, /or any other specific documentation required by Carrier's customer, drivers' logs, detention records, and driver's fuel and fuel tax reports, fuel tickets, permits, fully executed Carrier and shipper bills of lading, properly processed customs documents, dock and warehouse receipts, supporting documentation for loading and unloading fees, detention and other accessorial charges that are reimbursable to Carrier by the customer in accordance with applicable tariff provisions, and vehicle inspection reports, and other evidence of proper delivery and any other documents that may be required by the Rules and Regulations of the DOT, or any other federal, state, or foreign regulatory agencies, or the customer. Contractor further understands that time is of the essence in relation to submission of the proper paperwork in a timely manner.

C. **Timely Payment**. Payment, less any applicable deductions, chargeback items or any additional items owed to Carrier by Contractor, as set forth more particularly herein, shall be made by Carrier to Contractor as specified in Exhibit A and upon submission of all properly completed required documents and paperwork as specified in Paragraph 3B of this Agreement, relating to the transportation of commodities. Noncompliance with Paragraph 3B of this Agreement shall disqualify Contractor for payment until such time as within thirty (30) days after all items are fully and correctly completed and presented to Carrier. Contractor agrees that Carrier may designate a payment agent or other entity to make settlements to Contractor.

D. **Payee**. All payments, less advances and deductions specified herein, shall be made directly to Contractor. Contractor shall be solely responsible for compensation of all Contractor's agents and/or employees.

E. **Additional Payments to Contractor**. Carrier shall pay Contractor upon collection any detention or other accessorial service charges as shall be properly submitted on the trip documentation pursuant to Paragraph 3(B).

F. **Final Settlement**. Final settlement from Carrier shall be made within forty-five (45) days of satisfactory proof by Contractor of full compliance with the provisions of this Agreement relating to termination, including payment of all amounts owed by Contractor to Carrier.

4. **EQUIPMENT CONDITION**. Contractor agrees that all equipment furnished herein shall be in compliance with the Rules and Regulations of DOT and various states in or through which Carrier operates. It is understood that the condition of Contractor's equipment for the duration of this Agreement shall meet or exceed all federal and state and Carrier regulations presently in force or enacted in the future.

DocuSign Envelope ID: 1703ACB7-E0F8-4C60-B896-A0F2EA14C2E0

A.     Carrier has the right to inspect the equipment for compliance with standards.  This inspection shall occur not less than once every thirty (30) days.

B.     Any expense associated with maintaining Contractor's equipment is the sole responsibility of and shall be borne solely by the Contractor. In the event Contractor's equipment, due to mechanical failure, is unable to perform services under this Agreement, Carrier reserves the right to transfer the cargo and make delivery, deducting such additional cargo from Contractor's compensation.

C.     All maintenance records concerning the equipment shall be forwarded by Contractor to Carrier at the end of each calendar month during which this Agreement is in effect.

D.     Contractor shall also have the equipment inspected at least annually in accordance with 49 C.F.R. § 396.17.

E.     Carrier may provide certain devices, such as electronic logging devices (ELD), driver cameras, or GPS devices to be used in Contractor's equipment. These devices will remain property of the Carrier and must be returned to the Carrier at the termination of this Agreement or upon Carrier's request. Carrier will have no obligation to make final settlement payment to Contractor or to return Carrier's escrow amounts unless such devices are returned. Carrier may deduct from any settlement or escrow for damage to or loss of such devices and for monthly data and other charges imposed by the vendor that manages such devices.

5.     **CONTRACTOR'S EMPLOYEES**.  If Contractor determines that it is necessary to use drivers, driver helpers, laborers, or others to perform the work under this Agreement, they shall be employed at Contractor's expense.  However, all revenue paid to Carrier by shipper or consignee for services provided under this Agreement will be allocated to Contractor only and not to employees of Contractor.  Such employees of Contractor shall be qualified under and meet all requirements of Contractor and contractor's insurance policies, applicable federal and state laws and municipal ordinances, and all regulations of any governmental agency having jurisdiction in such matters.   Such qualifications shall be satisfactorily proven to Carrier prior to performance of said duties.  Contractor retains the right to hire and fire its employees and may replace its existing employees with others, duly qualified, upon the consent of the Carrier, whose consent will not be unreasonably withheld.  Contractor shall be solely responsible for the direction and control of its employees in fulfilling its obligations under this Agreement including but not limited to load selection and rejection, selection, compensating its employees and selections of hours and working conditions and corresponding grievances of its employees.

6.     **WAGES OF CONTRACTOR'S EMPLOYEES**.  Contractor shall be, and under no circumstances will Carrier be, responsible for the withholding, payment and reporting of any payroll taxes for Contractor or Contractor's employees, whether in connection with services performed by Contractor under this Agreement or for any

DocuSign Envelope ID: 1703ACB7-E0F8-4C60-B896-A0F2EA14C2E0

other reason, including but not limited to federal, state, and/or local income taxes, social security taxes, and/or federal and/or state unemployment taxes.

7. **CONTRACTOR'S RESPONSIBILITY FOR WORKERS COMPENSATION**. Contractor specifically agrees, and is required by this Agreement, to obtain workers' compensation or occupational accident insurance for Contractor and for all his/her/its employees. Contractor hereby agrees to indemnify and holds Carrier harmless from all claims and demands thereof that may be made against Carrier. The laws of the State of Illinois shall govern interpretation, enforcement, and the determination of all benefits payable pursuant to workers' compensation.

8. **CONTRACTOR'S RESPONSIBILITY FOR PAYMENT OF EXPENSES**. Contractor agrees to pay without limitation and is responsible for the following charges:

A. Fuel costs. Carrier will pay fuel and road taxes and IFTA fees and obtain IFTA decals if Contractor uses Carrier's fuel card. If Contractor uses its own fuel card, it must pay fuel and road taxes and IFTA fees under its own account. If Contractor uses its own IFTA card, it must provide quarterly IFTA summary and payment receipts to Carrier.
B. Applicable tolls.
C. Equipment use licenses and charges, including for ELD, GPS, and cameras in vehicles, permits of all types, base license plates, taxes and fines.
D. Trailer rental for Carrier's trailers used by Contractor.
E. Load revenue proration, if any, including local pick-up and delivery charges as identified herein.
F. Applicable repair orders for repair of Contractor's equipment.
G. Applicable repair orders for repair of Carrier's equipment caused by Contractor limited to the amount of any applicable deductible if insurance is applicable.
H. Auto/Truck liability insurance on Contractor's equipment.
I. Physical damage insurance on Contractor's equipment.
J. Bobtail/Deadhead (a/k/a Non-Trucking) liability insurance on Contractor's equipment.
K. Workers' compensation or occupational accident insurance for Contractor as well as all agents and/or employees of Contractor.
L. Cargo (freight) claims including shortages and/or damage incurred during transport by Contractor, its agents and/or its employees, under the terms of this Agreement.
M. Any and all regulatory or traffic fines or penalties incurred during the operation of Contractor's equipment, including but not limited to overweight, over-length, or over-width fines and/or penalties, resulting from Contractor's

acts or omissions, and/or the acts or omissions of any drivers, agents and/or any employees hired by Contractor.

N. Overpayments to Contractor.

O. Excessive mileage charges on Carrier's trailers and/or loss of Carrier's trailers.

P. Wrecker services, transfer charges, warehouse and/or cold storage charges, limited to the amount of the deductible if insurance is in place.

Q. For cash advances, an administrative fee of $25 per advance beginning with the second advance provided by Carrier to Contractor. The decision on whether to provide advances is entirely within the discretion of Carrier.

R. Lease payments owed by Contractor to the lessor for the Equipment or financing payments owed by Contractor for the purchase of the Equipment.

S. A fee of $500.00 if Contractor fails to communicate with Carrier for 12 hours while under dispatch or 48 hours if not under dispatch.

As an accommodation to Contractor, upon election of Contractor, Carrier will deduct the above-charges from Contractor's settlements for equipment used in the performance of this Agreement, and all other costs incurred in the performance of this Agreement. Should Contractor elect to have Carrier deduct these amounts from settlement, Carrier shall also deduct advances (including transaction charges) and any other costs paid by Carrier on Contractor's behalf. Carrier shall escrow funds as referenced in Paragraph 11, regardless of Contractor's election.

9. **CONTRACTOR INSURANCE REQUIREMENTS**. Insurance will be obtained and allocated as follows:

A. **Liability Insurance**. Carrier will maintain insurance coverage for the protection of the public pursuant to DOT regulations under 49 U.S.C. § 13906 and 49 C.F.R. § 387for Contractor's vehicles which are under dispatch to Carrier and will charge Contractor a premium for this insurance applicable to Contractor's Equipment. This insurance has a $5.000 deductible. Contractor must agree to pay the deductible when applicable or it will be deducted from Contractor's escrow account. Carrier will reject uninsured and underinsured motorist coverage were allowed and will maintain the minimum underinsured or uninsured coverages in the states where it cannot be rejected entirely.

B. **Non-Trucking**. Contractor agrees to carry Bobtail/Deadhead (Non-Trucking) liability insurance coverage with respect to public liability, bodily injury and property damage with the limit of $1,000,000 for any single accident (combined single limit) for each of the equipment listed under paragraph 2 of this Agreement. Contractor shall include Carrier as named insured, with a 30-day cancellation notice. Contractor's insurance company is

to provide Carrier with a copy of the Certificate of Insurance showing the additional named insured endorsements and limits of liability.

C. **Physical Damage**. Contractor agrees to obtain physical damage insurance on its Equipment with minimum of $10.000 coverage for towing.

D. **Workers' Compensation**.  Contractor must obtain a workers' compensation or occupational accident insurance policy for Contractor and any employees who are employed by Contractor in connection with the performance of this Agreement.

E. **Cargo Insurance.** Carrier will maintain cargo coverage in the amount of $100,000 for shipments hauled on Contractor's equipment. This insurance has a $5.000 deductible. Contractor must agree to pay the deductible when applicable or it will be deducted from Contractor's escrow account.

F. **Passenger Insurance.** Contractor shall provide passenger insurance for every authorized passenger in the vehicle. The Contractor may elect to have Carrier provide insurance coverage and deduct all costs from the Contractor's settlements

G. **Other Insurance**.  Contractor shall maintain, at its own expense, such other insurance as it desires covering the equipment provided by Contractor in its performance covered under this Agreement.  Carrier will, however, only carry such insurance as is required by DOT regulations under 49 U.S.C. 13906.

H. **Proof of Insurance**.  Contractor shall either elect insurance coverage provided through Carrier by completing the required application forms or provide proof of all required insurance policies as stated.  Failure to provide such proof of coverage will result in immediate termination of this Agreement. Should Contractor fail to obtain any insurance required by this Agreement, Contractor shall indemnify and hold harmless Carrier from all claims or damages arising out of Contractor's failure to maintain such insurance. Proof of insurance under this paragraph shall consist of a certificate of insurance furnished by Contractor to Carrier, listing Carrier as a certificate holder and providing Carrier with at least thirty (30) days notice of any cancellation or change in insurance.

I. **Contractor Deduction for Insurance.**  The Contractor may elect to have Carrier provide insurance coverage required by this agreement and deduct all costs from the Contractor's settlements. If Contractor will not accept loads from Carrier for a defined period (e.g., a week of vacation), he/she/it must give Carrier thirty (30) days notice to avoid deductions for insurance during the no-load period.

J. **Deductibles.**  Contractor is required to pay all deductibles on coverages applicable to the vehicles listed in Paragraph 2.

K. **Subrogation.**  Contractor waives all rights of subrogation against Carrier, and in the event of a subrogation action brought by Contractor's insurer, Contractor agrees to hold harmless and indemnify Carrier.

L. **Carrier is not in the Insurance Business.** Contractor acknowledges that Carrier is not in the business of selling insurance.

**10.** <u>**CONTRACTOR OBLIGATIONS FOR CLAIMS**</u>. Contractor shall be responsible to Carrier, and shall through settlement deduction, escrow/security deduction, or reimbursement to Carrier, hold Carrier harmless from all claims listed in A-D below. Carrier will pursue recovery of the below claims through a collection agency or a lawsuit against Contractor.

A. **Cargo**. Loss, shortage, or damage to any cargo transported under this Agreement for which the applicable insurance excludes coverage, for which a deductible applies, or for which the claim exceeds the amount of the available coverage.

B. **Carrier's Equipment**. Damage or loss for whatever reason to the equipment of Carrier used under this Agreement by Contractor, its agents, servants or employees, including any vandalism of Carrier's equipment by Contractor.

C. **Bodily Injury/Property Damage**. Injury or death to any person, or damage or loss to any real or personal property occurring during the performance of this Agreement for which the applicable insurance excludes coverage, for which a deductible applies, or for which the claim exceeds the amount of the available coverages. Contractor shall immediately report or cause to be reported to Carrier any accidents, injuries, property damage of any nature, and/or cargo loss, damage or shortage and as soon as practicable to submit a full and complete written report covering such occurrence to Carrier's insurance and claims department in the form and manner required to Carrier, DOT, or any other governmental agency or entity.

D. **Underinsured and Uninsured Motorist Claims by Contractor's Employees.** In the event Contractor's employees assert and make recovery under Carrier's liability policy claims for uninsured or underinsured motorist coverage and to the extent Carrier is responsible to satisfy a deductible or any portion of the recovery is not paid by insurance coverage, Contractor shall reimburse Carrier for such payments.

**11.** <u>**ESCROW/SECURITY DEPOSIT**</u>. Carrier shall have the right to implement escrow procedures. If Carrier elects to do so, escrow shall be managed as follows. Contractor agrees and authorizes Carrier to withhold and reserve an escrow/security. This deposit is to be created using a minimum weekly deduction of $200.00 continuing on an ongoing basis until there is a minimum balance in the escrow account of two thousand dollars ($2000.00). At the termination of this Agreement, by either party, Carrier shall repay said deposit within forty-five business (45) days provided that all identification stamps, permits, prorates, permit numbers, and all identification placards are returned to Carrier and all liabilities due Carrier are satisfied in full. It is agreed by Contractor that Carrier may deduct from the security deposit (escrow account) the

DocuSign Envelope ID: 1703ACB7-E0F8-4C60-B896-A0F2EA14C2E0

herein named deduction items as stated by the terms of this Agreement. Interest on the amount held in escrow shall be calculated as required by law and paid to Contractor on a quarterly basis. To the extent the account balance is not at $2000, then interest will be paid to the escrow account. At Carrier's discretion, if the account balance falls below $2000, additional deductions may be made to restore the balance to a minimum of $2000.

**A.** **Escrow/Security Deposit Deductions**. Contractor will be provided a written explanation and itemization of all deductions for cargo or property damage made from Contractor's settlement or security deposit (escrow account).

**B.** **Deduction Authorization**. Contractor hereby specifically authorizes Carrier to withhold or deduct from any money due Contractor, sums sufficient to reimburse Carrier when such reimbursement is provided by the terms of this Agreement. Carrier may pursue any and all remedies available at law or in equity, including reasonable attorneys' fees and court costs.

12. **LIABILITY FOR VIOLATIONS**. In the event that Contractor or any of its employees or agents violate any rules and/or regulations of DOT, or any federal or state law or regulation, or any municipal ordinance, and, as a result thereof, Carrier is fined in any court or by any governmental agency or entity, Contractor shall reimburse Carrier therefor and for any expenses incurred in connection therewith, including but not limited to reasonable attorneys' fees. Should Contractor fail to reimburse Carrier for these stated charges, Contractor hereby agrees to have all the costs involved deducted from his settlement or escrow/security deposit. Carrier will pursue recovery of the above expenses through a collection agency or a lawsuit against Contractor.

13. **CONDUCT AND CONFIDENTIALITY**. Contractor agrees to conduct all activities and personal conduct in the best business interest of Carrier. Contractor acknowledges that the identity of Carrier's customers, the needs and procedures of Carrier's customers, and Carrier's relationships to its customers are one of its most valuable assets. As Carrier's Contractor, Contractor and its employees will be exposed to and learn this information to which Contractor would not be exposed otherwise. Contractor recognizes that use of knowledge gained during the term of this Agreement in competition with Carrier would be detrimental to Carrier's business. As a result, Contractor agrees not to disclose or utilize this information for a period of two years following the termination of this Agreement. Contractor agrees that a violation of this provision would entitle Carrier to an injunction to prohibit such further violation. Contractor agrees that a proper penalty for violation of this provision is forfeiture to Carrier of one-half of all gross revenue earned in violation of this provision. Contractor also agrees to perform the transportation under this Agreement in a safe, competent and workmanlike manner and at the earliest time practical and permissible under DOT rules and regulations, after the freight is tendered for movement by the shipper.

14. **INDEPENDENT CONTRACTOR STATUS**. Contractor is retained only for the purposes and to the extent set forth in this Agreement. Contractor's relationship to Carrier shall be that of an independent contractor. The parties elect that Contractor shall be an independent contractor pursuant to 49 C.F.R. § 376.12(c)(4). The parties intend that Contractor and its employees shall not be considered to be employees of Carrier under the provisions of any and all federal and state laws and any other municipal ordinances and/or government regulations that may be applicable and that the Contractor and its employees shall be employees only of Contractor pursuant to Internal Revenue Code § 3401(d). Carrier may establish policies through an company policy handbook or similar manual. These policies apply to Contractor and and its employees. The parties agree that Contractor is and shall be free from any control of Carrier as to means and methods of accomplishing the result herein contracted for, including but not limited to the following:

   a. Contractor has the right to refuse acceptance of any particular shipment rendered to Contractor, which Contractor may claim to be inconvenient or uneconomical for its service.
   b. It is also agreed that the Contractor is not required to purchase or rent any products, equipment, or services from Carrier as a condition of this Agreement.
   c. Contractor may locate loads and arrange for "trip leases" with other motor carriers, provided the other motor carrier provides suitable documentation of insurance, authority, and qualification to Carrier. Carrier must approve the trip lease at least 48 hours prior to taking possession of the freight which is the subject of the trip lease. Contractor may not use any trailer belonging to Carrier or Carrier's customer for any trip lease without Carrier's written authorization.
   d. Contractor shall determine the following:
      i. Setting of wages for Contractor's employees;
      ii. Selection of routes;
      iii. Rest stops and breaks, except as mandated by regulation;
      iv. Location of repairs;
      v. Selection of fuel and maintenance locations;
      vi. Working hours, except as mandated by regulation.

There shall be no relationship between Carrier and Contractor or Contractor's drivers, agents, or other employees as long as this Agreement is in effect. Neither party is the agent of the other, and neither party shall assume the right to bind the other by contract or otherwise, except as herein specifically provided. Nothing in this agreement shall be construed as preventing Contractor from entering into similar agreements with other companies provided that no movement may be made for any other company until the equipment has been de-identified in accordance with this Agreement's termination provisions. It is hereby understood and agreed between Contractor and Carrier as follows:

A. Carrier does not warrant any gross revenue from any normal or special routing and/or dispatching as a result of entering into any agreement between Contractor and Carrier.

B. Carrier does not guarantee any special routes or dispatching areas other than those deemed necessary by Carrier in the normal course of business.

C. Contractor agrees to hold Carrier free and harmless from any business losses that result from this Agreement and understands that no agreement of any kind or statement of any kind shall be valid and binding as it relates to obligations created by and between parties unless the same shall have been reduced to writing and made expressly a part of this Agreement between the parties.

D. Contractor and its employees assume full responsibility for the risk of bodily injury, death, or property damage resulting from Contractor's negligence, the negligence of Carrier, or the negligence of any person, while in or on the premises, locations and property owned and/or leased by Carrier.

E. Contractor agrees to indemnify and hold Carrier harmless from any and all claims, demands, actions, losses, liabilities, or causes of action made by anyone for bodily injuries, personal injuries, or property damages resulting from Contractor's acts or omissions, and/or the acts or omissions of any drivers, agents, and/or any employees hired by Contractor, to include claims asserted against Carrier by Contractor's employees or agents.

F. In the event of any claim or suit involving Carrier, Contractor agrees to cooperate fully in the investigation, prosecution, and defense of such claims or suits.

G. Contractor agrees that Contractor is not under dispatch before beginning work until Contractor arrives at Carrier's facility. Contractor agrees that Contractor is not under dispatch during Contractor's travel from Contractor's driver's residence to Carrier's facility.

15. **CASH CARD USAGE.** In the event that Contractor elects to utilize a charge or cash card issued in Carrier's name for the purpose of purchasing fuel or other operational expenses, Contractor hereby agrees to hold Carrier harmless from any use or misuse of such card or program. Contractor further agrees that such charges will be deducted from Contractor's settlement or escrow/security deposit. Should the deduction amount be greater than the combination of settlement and escrow/security balances, Contractor further agrees to pay for these charges and hold Carrier harmless from such charges including, but not limited to, any interest, fines, or penalties attached to said charges for late or non-payment. In the event Carrier receives a discount for purchasing fuel, Carrier will pass along the at-pump discount to Contractor. Carrier will not pass along any rebates or discounts later received from fuel vendors.

16. **LOADING RESPONSIBILITY**.  Contractor shall be solely responsible for the live loading and live unloading of any and all commodities or other items or materials to be transported or used to transport commodities pursuant to the terms of this Agreement.

17. **PAYMENT TO CARRIER FOR SERVICES PERFORMED**.  In the event that Carrier or any of its employees or contracted agents performs duties associated with a load assigned to Contractor, especially, but not limited to, pickup and/or delivery, Contractor agrees to pay Carrier, through reimbursement, settlement deduction, or escrow/security deposit deduction, Carriers' rate for the services performed.  The amount charged to Contractor will be a proration of the total revenue of the move by the number of miles that is involved in the pickup and/or delivery done by Carrier, over the total miles involved in the freight bill, with a minimum charge amount not less than fifty dollars ($50.00).

18. **COLLECTION OF CHARGES**.  Contractor is completely responsible for the collection of freight charges which are on a cash Freight Collect basis, and for the collection of monies on Collect on Delivery (COD) shipments.  Contractor agrees to indemnify Carrier and hold Carrier harmless from any loss arising out of any acts or omission of Contractor or Contractor's employees or agents with respect to the collection of Collect Freight charges or Collect on Delivery monies or their equivalents.

19. **RETURN OF TRAILER**.  Upon termination of this Agreement, Contractor shall be responsible for returning to Carrier trailers or other equipment assigned to Contractor by Carrier. The equipment shall be returned to Carrier's location listed in Paragraph 25 within forty-eight (48) hours of notice of termination of this Agreement by either party, unless otherwise designated by Carrier.  Contractor shall be solely responsible for all costs incurred by Carrier or Contractor in returning, or arranging for the return of, said equipment to said location.  In the event Contractor retains Carrier's equipment or otherwise refuses to deliver possession thereof within forty-eight (48) hours of termination of this Agreement, Contractor agrees to be additionally liable in the amount of two hundred dollars ($350.00) per day for each day the equipment is held in the constructive or actual possession of Contractor beyond the said forty-eight (48) hour period, plus all costs of collection in recovery of said equipment, including any attorneys' fees.

20. **CONSEQUENCE OF VIOLATION OF AGREEMENT**.  In the event of either party violates any term, condition, or provision of this Agreement that does not render this Agreement null and void, the other party shall have the right to immediately terminate this Agreement unless such right is specifically waived in writing. For any litigation arising from a breach of any provision of this Agreement or of any rights and obligations of the Parties to this Agreement, the prevailing party shall be entitled to recover its reasonable attorney's fees.

21.　**GOVERNMENT OF TERMS AND CONDITIONS**.　The terms, conditions and provisions of this Agreement shall be governed by the laws of the State of Illinois, both as to the interpretation and performance.　Jurisdiction for any dispute under this agreement is solely in the state or federal courts embracing DuPage County, Illinois. The parties consent to exclusive jurisdiction and venue in such courts and waive any objections thereto.

22.　**UNDERSTANDING OF AGREEMENT**.　Contractor recognizes and affirms that he has read and fully understands this Agreement and any schedules and appendices hereto.　Contractor further states and affirms that no promise or inducement of any kind, or promise of special esteem, has been made by Carrier favoring Contractor as an independent operator.　Contractor further states that he possesses at the time of this Agreement the equipment for which use this Agreement has been made and that the equipment was not purchased as a result of any inducement or guarantee made by Carrier.

23.　**COPY OF AGREEMENT.**　Contractor agrees to maintain a copy of this Agreement in all vehicles subject to this agreement.

24.　**RECEIPT.**　Upon giving possession and control of vehicles subject to this Agreement to Carrier, Carrier shall issue a receipt for possession of the vehicles to Contractor.　A copy of such receipt must be kept in the vehicle at all times this Agreement is in effect.　Upon termination of this Agreement, Contractor agrees to receive possession of the vehicles subject to this Agreement and issue a receipt to Carrier recognizing the return of possession and control of the vehicle(s).

25.　**NOTICES**. Unless the PARTIES notify each other in writing of a change of address, any and all notices required or permitted to be given under this Agreement shall be in writing (or fax with machine imprint on paper acknowledging successful transmission) and shall be addressed as follows:

(CONTRACTOR)
BOSCO'S TRUCKIN 82 LLC
Attn: Leslie Hill
Address:

Phone:
Fax:

(CARRIER)
CARGO RUNNER, CO.
Attn: Ivan Krstevski
Address: 131 Tower Dr
Burr Ridge, IL 60527

Phone: (630) 286-9745
Fax:　(630) 214-7914

26. **ENTIRE AGREEMENT**. This instrument represents the entire agreement between the parties hereto, any representations made to Contractor by Carrier or Carrier's employees notwithstanding. This Agreement replaces all prior leases, agreements, and/or contracts between Carrier and Contractor named herein. This Agreement may not be altered or modified except in writing.

**IN WITNESS WHEREOF,** the parties hereto have set their hands, executing this Agreement in duplicate originals, the day and year first written above.

**Contractor:**
BOSCO'S TRUCKIN 82 LLC

By: _Lisa Bell_

Title: Lease operator

**Carrier:**
**CARGO RUNNER, CO.**

By: Ivan Krstevski

**Title: President**

CARGO RUNNER,CO.

RECEIPT FOR EQUIPMENT

CARGO RUNNER, Co. ("Carrier") hereby acknowledges receipt of the following

equipment under Lease #412 , on 08 th July 2021:

| Unit # | Year | Make | Model | Serial # |
|--------|------|------|-------|----------|
| 412 | 2019 | International | LT625 | 3HSDZAPR9KN757921 |

**Contractor:**

BOSCO'S TRUCKIN 82 LLC

**By:** _Lishe Bell_

**Title:** Lease operator

**Date:** 7/8/2021

**Carrier:**
**CARGO RUNNER, CO.**

**By: : Ivan Krstevski**

**Title: President**

**Date:** 7/8/2021

# APPENDIX A
## Contractor Compensation

Contractor percentage of the freight rate agreed to by Carrier and Contractor on a per-shipment basis: _80_ %

Accessorial paid to contractor:

_____

_____

_____

**Contractor:**
BOSCO'S TRUCKIN 82 LLC
_____

**By:** _Lorhie Bell_____

**Title:** _Lease operator_____

**Date:** _7/8/2021_____

**Carrier:**
**CARGO RUNNER, CO.**

**By: : Ivan Krstevski**

**Title: President**

**Date:** _7/8/2021_____

## APPENDIX B
### REGISTRATION/LICENSE PLATES/BASE PLATES
### (TAG PROGRAM)

In the event Contractor owns his own base plate for the Equipment, Contractor shall be responsible for the registration. Contractor may, however, request that Carrier obtain a base plate under Carrier's IRP Permit for use by Contractor, the cost of which shall be deducted from amounts otherwise payable to Contractor through settlements, escrow/security balances under this Agreement. Contractor shall remove and return such plate to Carrier after termination of this Agreement and, in the event Contractor fails or refuses to do so, Carrier shall, and is hereby authorized to, deduct in full the cost of the plate from Contractor's final settlement, escrow/security balance. If Carrier receives a refund or credit for an IRP plate registered in the name of Carrier or such plate is authorized by Contractor to be resold by Carrier to another independent contractor, Carrier shall refund to Contractor a pro-rata share of the amount received by Carrier, if Contractor returns the plate to Carrier. If base plates are supplied by Contractor, Contractor must supply Carrier with the base plate registration initially when leasing and annually, and the Carrier's USDOT number must be listed on the registration. In the event Contractor elects to participate in Carrier's Tag Program, Carrier agrees to provide an apportioned license plate for Contractor's vehicle. Carrier shall deduct $ 60.00 per week to satisfy Contractor's obligation to obtain a tag. This payment will include an apportioned tag, 2290 obligations, and an administrative fee. Contractor acknowledges this is a voluntary program, and Contractor may pay these obligations directly, without being in the program.

**Contractor:**

BOSCO'S TRUCKIN 82 LLC

**By:** _Loshe Well_

**Title:** Lease operator

**Date:** 7/8/2021

**Carrier:**

**CARGO RUNNER, CO.**

**By: : Ivan Krstevski**

**Title: President**

**Date:** 7/8/2021

# APPENDIX C
## CARRIER OWNED EQUIPMENT

1.      Keeptruckin or other Mobile Communication Device/Electronic Logging Device: Contractor must provide a device that is compatible with Carrier's operations.  If Contractor elects to use Carrier's ELD, then Contractor shall pay [$30] per week for the rental and usage of the equipment. Such payment will be a settlement deduction pursuant to Paragraph 8 of the Agreement. Contractor agrees to allow Carrier to install the unit.  Contractor shall allow Carrier to remove the unit at the termination of this Agreement, and such shall be returned in good condition, normal wear and tear accepted.

2.      Contractor agrees that Carrier shall have access to all data collected by Carrier-Owned equipment.  Contractor may have access to this data upon request upon 72 hours' notice.


**Contractor:**                                           **Carrier:**
  Bosco Truckin 82                                        **CARGO RUNNER, CO.**


**By:** _Loshie Bell_____            **By::** Ivan Krstevski

**Title:** ___Lease operator_____            **Title: President**

**Date:** _7/8/2021_____                            **Date:** ___7/8/2021_____

DocuSign Envelope ID: 1703ACB7-E0F8-4C60-B896-A0F2EA14C2E0

# APPENDIX D
## AUTHORIZATIONS FOR DEDUCTIONS

### TRUCK#: 412

Contractor does hereby authorize Carrier to deduct from settlements in the amount listed below:

| Deductions | Payment amount | | Frequency of deduction | Amount |
|---|---|---|---|---|
| Escrow | $200 | 10 | One Time / **Weekly** / Monthly / Yearly | $2000 |
| Registration &2290 HWY USE | $ 60 | | One Time / **Weekly** / Monthly / Yearly | |
| OCC ACC | $ 35 | No end date | One Time / **Weekly** / Monthly / Yearly | |
| Physical insurance | $126.36 | | One Time / **Weekly** / Monthly / Yearly | |
| Truck payment | 3x$1000 175 x$800 | | One Time / **Weekly** / Monthly / Yearly | |
| Truck deposit | n/a | | One Time / **Weekly** / Monthly / Yearly | |
| Trailer rent | $450 | | One Time / **Weekly** / Monthly / Yearly | |
| Cargo | Included | | One Time / **Weekly** / Monthly / Yearly | |
| MVR | n/a | | **One Time** / Weekly / Monthly / Yearly | |
| Drug test | n/a | | **One Time** / Weekly / Monthly / Yearly | |
| Hotel/uber/flight | n/a | | **One Time** / Weekly / Monthly / Yearly | |
| AOBRD & TABLET deposit | n/a | | **One Time** / Weekly / Monthly / Yearly | |
| ELD + TVC | Included | | One Time / **Weekly** / Monthly / Yearly | |
| Maintenance account | $0.10      per mile | | One Time / **Weekly** / Monthly / Yearly | optional |
| transflo | $5 | | One Time / **Weekly** / Monthly / Yearly | |
| Prepass | Included | | One Time / Weekly / **Monthly** / Yearly | optional |

**Contractor:**
BOSCO'S TRUCKIN 82 LLC

By: _____

Title: Lease operator

Date: 7/8/2021

**Carrier:**
**CARGO RUNNER, CO.**

By : Ivan Krstevski

Title: President

Date: 7/8/2021

DocuSign Envelope ID: 1703ACB7-E0F8-4C60-B896-A0F2EA14C2E0

# APPENDIX E
## AUTHORIZATIONS FOR DEDUCTIONS

### TRUCK#: 412

Contractor does hereby authorize Carrier to deduct from settlements in the amount listed below:

| Deductions | Payment amount | Frequency of deduction | Amount |
|---|---|---|---|
| TRUCK LEASE PAYMENT | | One Time / **Weekly**/ Monthly / Yearly | |
| TRAILER LEASE PAYMENT | | One Time / **Weekly**/ Monthly / Yearly | |

**Leesor:**

**Date:** 7/8/2021

**Contractor:**
BOSCO'S TRUCKIN 82 LLC

**By:** _Leshie Hill_

**Title:** Lease operator

**Date:** 7/8/2021

**Carrier:**
**CARGO RUNNER, CO.**

**By :** _____

**Title: President**

**Date:** 7/8/2021

## APPENDIX F
## SAFETY VIOLATIONS

**Drivers will incur penalties when receiving violations from the DOT, Highway Patrol and State Transport Police.  For Any safety related violations, driver will be disciplined according company's disciplinary program ( Company Policy).**

**Contractor:**
BOSCO'S TRUCKIN 82 LLC

By: _____

Title: Lease operator

Date: 7/8/2021

**Carrier:**
**CARGO RUNNER, CO.**

By: Ivan Krstevski

Title: President

Date: 7/8/2021